**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2305
_____

RASHID ABDULAI,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a Final Administrative Removal Order of the
Department of Homeland Security
(Agency No. A216-473-874)
Immigration Judge:  Alice Song Hartye
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 16, 2021

Before:  AMBRO, JORDAN, and RENDELL, *Circuit Judges*

(Filed: August 10, 2022)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

The Department of Homeland Security ("DHS") placed Rashid Abdulai in expedited removal proceedings, charging him with being removable as a person convicted of an aggravated felony. It eventually issued a Final Administrative Removal Order ("FARO"), and Abdulai filed a petition for review. He challenges the DHS's legal conclusion that his prior conviction for conspiracy to commit fraud was an aggravated felony, and he also asserts that the government's handling of his case violated his procedural due process rights. For the following reasons, we will dismiss the petition for review.

I.    **BACKGROUND**

Abdulai is a native and citizen of Ghana who entered the United States in September 2013 with a non-immigrant visitor visa. He overstayed his visa's departure deadline. Years later, in November 2018, he was indicted in federal court in Tennessee for money laundering and for conspiring to commit bank fraud, wire fraud, and mail fraud. The indictment alleged that, in furtherance of a scheme to defraud businesses and individuals, Abdulai: received a check from one victim for approximately $15,000; received wire transfers from other victims and from co-conspirators in amounts totaling $48,000; and sent wire transfers to co-conspirators in amounts totaling $42,000. He pled guilty to the conspiracy charge; the money-laundering charge was dismissed.

A presentence investigation report added more details about Abdulai's involvement in the scheme. It concluded that the total loss amount attributable to his involvement was approximately $145,000, and a supplement to the report described how

Abdulai impersonated a woman on Facebook in order to trick a man from Georgia into mailing Abdulai's wife a check for $51,000.  Based on the presentence report and supplement, Abdulai was ordered to pay $51,000 in restitution and was sentenced to a prison term of twelve months and one day.

On March 10, 2020, DHS served Abdulai with a Notice of Intent to Issue a FARO. The Notice of Intent charged Abdulai with being deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he was convicted of an aggravated felony, as defined in 8 U.S.C. § 1101(a)(43)(M) and (U).  DHS issued the FARO on April 22, 2020, and it was served on Abdulai on May 26.

After receiving the FARO, Abdulai sought protection from removal, and, after consideration by an asylum officer and an immigration judge ("IJ"), Abdulai was scheduled for "withholding-only proceedings." Those proceedings went forward, and the IJ denied Abdulai's application in an order that was served on November 6, 2020. Abdulai did not appeal that denial to the Board of Immigration Appeals ("BIA"), so the IJ's ruling became final and unappealable on December 7, 2020.  8 C.F.R. § 1003.38(b).

Prior to the IJ's ruling in the withholding-only proceedings, Abdulai filed the pending petition for review of the FARO.

II.  DISCUSSION

A.  Jurisdiction

We begin by determining whether, under the Immigration and Nationality Act ("INA"), we have jurisdiction over Abdulai's petition for review.  There are three questions that present potential obstacles to jurisdiction: first, whether the FARO is a

3

final order of removal; second, whether Abdulai exhausted his administrative remedies; and, finally, whether the aggravated-felony bar strips us of jurisdiction.

Under 8 U.S.C. § 1252(a), we have appellate jurisdiction over final orders of removal only. "[A]n order is final for jurisdictional purposes when a removability determination has been made that is no longer appealable to the BIA, regardless [of] whether a formal order of removal has been entered." *Yusupov v. Att'y Gen.*, 518 F.3d 185, 195 (3d Cir. 2008) (collecting cases). There are arguably two times we might count as making Abdulai's FARO "final" and thus challengeable under § 1252(a). First, we might say the FARO was final when issued, even though withholding-only proceedings stayed his removal. *See Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 216 (3d Cir. 2018) (holding a reinstated removal order is not rendered nonfinal by reasonable fear proceedings because "withholding-only proceedings do not disturb the underlying order of removal; rather, they only potentially impede the order's execution with respect to a specific country"). The other option is to say that the FARO did not become final until the IJ denied Abdulai's application for relief and he declined to appeal to the BIA. If that is the time of finality, then Abdulai filed his petition for review in our Court prematurely because he filed before the IJ reached her decision. 8 C.F.R. § 1003.38(a).

We need not firmly determine at which of those two points the removal order became final because, under either option, we have jurisdiction. If it was when the FARO was issued, there was a final order of removal and Abdulai timely petitioned for review within 30 days of service. *See Villegas de la Paz v. Holder*, 640 F.3d 650, 653-55

4

(6th Cir. 2010). And if it was when the withholding-only proceedings concluded, Abdulai's petition ripened when the IJ issued her decision and the thirty-day deadline for appealing that order, *id.* § 1003.38(b), came and went without any action by Abdulai. *See Khan v. Att'y Gen.*, 691 F.3d 488, 494 (3d Cir. 2012) ("So long as the Attorney General has not shown that he will suffer prejudice resulting from the premature filing of a petition for review, and we have yet to take action on the merits of the appeal, a premature petition for review can ripen once the BIA issues a final order[.]"). Thus, the final-order rule does not deprive us of jurisdiction.[1]

Next, we may review a final order only if the alien has "exhausted all administrative remedies available to the alien as of right[.]" 8 U.S.C. § 1252(d)(1). Abdulai did not timely respond to the Notice of Intent,[2] and this is the first proceeding in which he has challenged the determination that his conviction was an aggravated felony. We recently decided, however, that "the INA's exhaustion requirement does not deprive

---

[1] The government initially moved to dismiss Abdulai's petition for lack of jurisdiction due to non-finality. After the IJ issued its decision in the withholding-only proceedings, however, the government moved to withdraw its motion to dismiss. Both motions are moot and effectively disposed of by our decision today to dismiss the petition for review.

[2] Abdulai alleges that he responded to the Notice of Intent and that the DHS received his response on April 23, 2020, after the Notice was served on him on March 10. But that purported response was not included in the supplemented administrative record, and Abdulai does not describe the substance of his response. Even if his response contested his conviction's qualification as an aggravated felony, it would not help Abdulai because it was filed well after the applicable deadline. *See* 8 C.F.R. § 238.1(c)(1) ("The alien will have 10 calendar days from service of the Notice of Intent[,] or 13 calendar days if service is by mail, to file a response to the Notice of Intent.").

us of jurisdiction to consider [a petitioner's] legal challenge for the first time on his petition for review" of a final order of removability resulting from expedited removal proceedings. *Barradas Jacome v. Att'y Gen.*, 39 F.4th 111, 116 (3d Cir. 2022). We reasoned that the applicable regulations, as well as DHS's practices, "strongly suggest" that legal challenges may not be raised during such proceedings. *Id.* at 118-21. Thus, the exhaustion-of-remedies rule does not deprive us of jurisdiction.

Lastly, § 1252 also limits our jurisdiction by prohibiting review of "any final order of removal against an alien who is removable by reason of having committed [an aggravated felony]." 8 U.S.C. § 1252(a)(2)(C). But that jurisdictional-stripping provision applies only if the petitioner "is, in fact, an alien who has committed an aggravated felony." *Singh v. Att'y Gen.*, 677 F.3d 503, 508 (3d Cir. 2012). We therefore may exercise jurisdiction over the predicate legal question of whether an offense is an aggravated felony. *Id.* Likewise, we retain jurisdiction to "examine constitutional claims or [other] questions of law." *Fan Wang v. Att'y Gen.*, 898 F.3d 341, 343 (3d Cir. 2018) (citation and internal quotation marks omitted).

### B. Legal Challenges

Abdulai raises two legal claims in his petition for review. First, he argues that the government wrongly determined that he had been convicted of an aggravated felony. Second, he argues that the government violated his right to procedural due process by delaying service of the FARO. Neither of those arguments is persuasive.

6

### 1. Challenge to Aggravated Felony Determination[3]

Under the INA, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The INA defines an "aggravated felony" as, among other things, "an offense that [] involves fraud or deceit in which the loss to the victim or victims exceeds $10,000[,]" or "an attempt or conspiracy to commit [such] an offense[.]" *Id.* § 1101(a)(43)(M)(i), (U). Abdulai does not meaningfully dispute that the crime of which he was convicted, conspiracy to commit bank fraud, wire fraud and mail fraud, is an offense that involves fraud or deceit.[4] Instead, he argues that his offense did not involve a loss to victims exceeding $10,000.

When determining whether an alien's offense caused over $10,000 in losses, we look to "the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion." *Nijhawan v. Holder*, 557 U.S. 29, 40 (2009). To do so, we review "the indictment, judgment, presentence investigation report, and any other 'sentencing-related material' that sheds light on [the alien's] conduct." *Rad v. Att'y Gen.*, 983 F.3d 651, 659 (3d Cir. 2020) (quoting *Nijhawan*, 557 U.S. at 42). A conspiracy to

---

[3] We have plenary review over the legal question of whether a conviction qualifies as an aggravated felony. *Rad v. Att'y Gen.*, 983 F.3d 651, 658 (3d Cir. 2020).

[4] Abdulai appears to argue that his conduct was more akin to money laundering than fraud, such that his offense was not a crime involving fraud or deceit. That is a non-starter. It should be obvious that he may not relitigate here the crime for which he has already pled guilty – conspiracy to commit fraud – which is categorically a crime of fraud and deceit. *See Nijhawan v. Att'y Gen.*, 523 F.3d 387, 390-91 (3d Cir. 2008) (holding that a conviction for conspiracy to commit fraud in violation of 18 U.S.C. § 371 is categorically a crime involving fraud or deceit), *aff'd*, 557 U.S. 29 (2009).

commit fraud or deceit satisfies the dollar threshold as long as the conspiracy *intended* to cause over $10,000 in losses, even if the conspiracy resulted in no actual losses. *Id.* at 670. Still, the loss must be "tethered" to the actual "offense of conviction," and not to "acquitted or dismissed counts or general conduct." *Singh*, 677 F.3d at 508 (quoting *Nijhawan*, 557 U.S. at 42).

The relevant materials plainly show that Abdulai's conspiracy intended to, and actually did, cause over $10,000 in losses to victims. The indictment, under the "Conspiracy to Commit Fraud" count to which Abdulai pleaded guilty, accused him of receiving and forwarding tens of thousands of dollars as part of the fraudulent scheme.[5] The presentence investigation report concluded that he was responsible for approximately $144,955 of the loss caused by the conspiracy. That report also described how Abdulai fraudulently caused one victim to send a check for $51,000 to Abdulai's wife, and the judgment required Abdulai to pay $51,000 in restitution. That information alone establishes that the conspiracy's victims suffered over $10,000 in losses and that those losses were "tethered" to Abdulai's conspiracy to commit fraud. Thus, his crime qualified as an aggravated felony under the INA.

---

[5] Abdulai also appears to argue that, once the transfers to his co-conspirators are accounted for, he personally received less than $10,000 in total for his participation in the defrauding scheme. Even if that were true, it would not affect our analysis. The loss requirement focuses on quantifying the "loss to the victim[,]" not the gain to the perpetrator. 8 U.S.C. § 1101(a)(43)(M)(i).

## 2. Procedural Due Process Challenge[6]

Abdulai's due process challenge fails because he has not shown that "substantial prejudice resulted from the alleged procedural errors." *Delgado-Sobalvarro v. Att'y Gen.*, 625 F.3d 782, 787 (3d Cir. 2010). He argues that the government's more-than-thirty-day delay in serving the FARO deprived him of his right to timely petition for review of that order. Under the INA's procedures for judicial review, "[a] petition for review must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). But the thirty-day deadline for seeking review of an order runs from the time that the order is properly *served* on the alien. *Villegas de la Paz*, 640 F.3d at 653-55. Abdulai filed his petition for review within thirty days of service, and so his petition was timely. He was not prejudiced by the supposed delay in service of the FARO.[7]

---

[6] "We review de novo whether [Abdulai's] due process rights were violated[.]" *Abdulrahman v. Ashcroft*, 330 F.3d 587, 595-96 (3d Cir. 2003).

[7] When the government submitted the administrative record containing the FARO, it failed to include the Notice of Intent. Later, the government sought leave to supplement the administrative record with the Notice of Intent, and we allowed it do so. Abdulai complains that the initial omission of the Notice of Intent violated Federal Rule of Appellate Procedure 17, which requires an agency to "file the record … within 40 days after being served with a petition for review[.]" Fed. R. App. P. 17(a). But Rule 17 goes on to say that "[t]he court may shorten or extend the time to file the record." *Id.* Thus, it was within our discretion to grant the government additional time to file a complete administrative record. We allowed Abdulai to submit a new opening brief after the government corrected its mistake, so he suffered no prejudice from that omission. *See NLRB v. Int'l Bhd. of Elec. Workers, Loc. Union 16*, 425 F.3d 1035, 1039 (7th Cir. 2005) (excusing the late filing of an administrative record where there was no prejudice).

**III.    CONCLUSION**

Ultimately, because Abdulai was convicted of an aggravated felony, we lack jurisdiction to further consider his petition for review.  8 U.S.C. § 1252(a)(2)(C).  We will therefore dismiss the petition.